## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

AMY YOUNG                                                    PLAINTIFF

V.                        No. 4:22-CV-731-LPR-JTR

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration                              DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Lee P. Rudofsky. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Rudofsky can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

### I.    Introduction

On May 6, 2020, Plaintiff Amy Young ("Young") filed concurrent Title II and Title XVI applications for a period of disability and disability insurance benefits and for supplemental security income. (Tr. at 24). In both applications, she alleged disability beginning on January 1, 2020. *Id.*

Young's applications were denied at the initial and reconsideration levels of review. *Id*. In a written decision dated June 3, 2021, an Administrative Law Judge ("ALJ") denied Young's applications. (Tr. at 24-33). The Appeals Council denied Young's request for review on June 16, 2022. (Tr. at 1-7). The ALJ's decision now stands as the final decision of the Commissioner, and Young has requested judicial review.

For the reasons stated below, the Court concludes that the Commissioner's decision should be affirmed.

## II.    The Commissioner's Decision

Young, who was 49 years old on the alleged disability onset date (Tr. at 32), meets the insured status requirement of the Social Security Act ("the Act") through December 31, 2024. The ALJ found that Young had not engaged in substantial gainful activity since the alleged disability onset date of January 1, 2020. (Tr. at 26). At Step Two, the ALJ determined that Young has the following severe impairments: mild right carpal tunnel syndrome; moderate left carpal tunnel syndrome; wrist tendonitis; fibromyalgia; degenerative disk disease of the cervical spine status-post fusion; and failed back syndrome. (Tr. at 27); 20 CFR §§ 404.1520(c) and 416.920(c).

At Step Three, the ALJ determined that Young's impairment did not meet or equal a listed impairment. (Tr. at 28); 20 C.F.R. Part 404, Subpt. P, Appendix 1 (20

C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). Before proceeding to Step Four, the ALJ determined that Young had the residual functional capacity ("RFC") to perform work at the light exertional level, with the following additional limitations: (1) she can only occasionally reach overhead bilaterally, and she can no more than frequently handle bilaterally; (2) she should avoid climbing ladders, ropes, or scaffolds; (3) she can no more than occasionally stoop and crouch; and (4) she should avoid concentrated exposure to excessive vibration. *Id*.

At Step Four, the ALJ determined that Young was capable of performing past relevant work as a data entry clerk, salesclerk, employment clerk, and cosmetologist. (Tr. at 32-33). While not required to do so, the ALJ elected to proceed to Step Five and determine, in the alternative, if there were other jobs in the national economy that Young can perform. After considering testimony from a vocational expert ("VE"), the ALJ found that, based on Young's age, education, work experience and RFC, she could perform other work, including positions such as furniture rental clerk and usher. (Tr. at 33). Therefore, the ALJ concluded that Young has not been under a disability, as defined in the Act, from January 1, 2020, through the date of the ALJ's decision (June 3, 2021). *Id*.

### III.   Discussion

#### A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

### B.   Young's Arguments on Appeal

Young contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. She argues that: (1) the RFC did not fully incorporate her limitations; (2) the ALJ failed to properly evaluate Young's subjective complaints; (3) the ALJ erred in his treatment of medical opinions; and (4) the Appeals Council did not adequately consider new evidence, which Young submitted after the April 2021 hearing before the ALJ.

Young focuses her arguments on her: cervical pain; carpal tunnel syndrome symptoms; and anxiety and depression.[1] A July 2019 MRI of the cervical spine showed moderate-to-severe spinal stenosis, and a July 2019 nerve conduction study showed mild-to-moderate carpal tunnel syndrome. (Tr. at 421, 422). Other than some decreased range of motion, tenderness, and occasional muscle spasms, clinical examinations were grossly normal.[2] (Tr. at 414-449, 607-620). Young's doctors recommended surgery for her cervical and wrist impairments, but she did not schedule a surgery until after the hearing. (Tr. at 54-55). It is not clear whether Young ever had that surgery.

---

[1] Young raised "anxiety and depression" in medical records she submitted to the Appeals Council after the ALJ's decision. Based on those supplemental medical records, she argues that the Appeals Council should have remanded the case to the ALJ with instructions to reconsider his decision in light of those records. The Court will address this issue, *infra*, at 12–14.

[2] Grossly normal clinical findings may support an ALJ's decision to deny benefits. *Gowell v. Apfel,* 242 F.3d 793, 796 (8th Cir. 2001).

Young treated these conditions with medication, steroid injections, and radiofrequency ablation, all of which provided some relief and allowed her to perform some daily activities.[3]  (Tr. at 30, 410-412, 459-478, 544-548, 605-607, 889-897). She also used wrist splints and home traction. *Id.* Young also had a prescription for and used medical marijuana. (Tr. at 30, 62).

Her doctors advised against bedrest and also encouraged Young to exercise. (Tr. at 407-437). Additionally, Young worked after the alleged onset date, although the work did not rise to the level of substantial gainful activity.[4]  (Tr. at 26).

Young alleged that absenteeism would prohibit her from working. (Tr. at 55-66). She claims that she had to call in sick several times per week due to pain or doctors' appointments. *Id.* As Defendant points out, there is no objective evidence of absenteeism in the medical evidence: her absenteeism claim is based only on her own allegations and her treating physician's opinion.[5]

---

[3] Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

Young said she could do a variety of activities like driving, preparing simple meals, and doing some grocery shopping. (Tr. at 58-62). She stated that she was a "moving [sic] binger" and a "reader." (Tr. at 60). Such daily activities undermine her claims of disability. *Edwards v. Barnhart,* 314 F.3d 964, 967 (8th Cir. 2003).

[4] Working generally demonstrates an ability to perform a substantial gainful activity, and it is inconsistent with complaints of disabling conditions. *Naber v. Shalala*, 22 F.3d 186, 188-89 (8th Cir. 1994).

[5] John Cockerell, M.D., a PCP, was Young's treating physician. (Tr. at 940).

### 1. RFC argument

While Young asserts that the assigned RFC did not fully incorporate her limitations, this claim lacks merit.[6] The ALJ accounted for the credible medical evidence and Young's complaints of pain (in her wrists, neck, and back). The RFC limited Young to no more than occasional overhead reaching bilaterally and no more than frequent handling bilaterally. (Tr. at 28). The ALJ did not include an RFC component about absenteeism.

Two Disability Determination Services ("DDS") medical experts reviewed the records in 2020, at the initial and reconsideration levels of administrative review.[7]  (Tr. at 73-126). The DDS medical experts limited Young to light work with overhead reaching restrictions. (Tr. at 82, 124). The ALJ, crediting evidence of additional functional difficulties, imposed an RFC even more restrictive than the DDS medical experts' assigned RFCs. (Tr. at 28). He considered the record as a whole.

---

[6] A claimant's RFC represents the most she can do despite the combined effects of all of her credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). An ALJ is not required to include limitations in the RFC that are not supported by the evidence in the record. *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003).

[7] Social Security Disability applications are initially processed through a network of local Social Security Administration field offices and State agencies (called Disability Determination Services or DDSs).

Accordingly, the RFC determination was proper. As discussed above, treatment was conservative, surgery was not performed during the relevant time-period, and Young could perform a variety of daily activities. Mere allegations of absenteeism without objective support do not suggest that the RFC was in any way deficient. The RFC fully incorporated Young's credible limitations.

### 2. Subjective complaints

Next, Young contends that the ALJ failed to fully consider her subjective complaints.[8] In fact, the ALJ discussed Young's daily activities, the nature and extent of her pain, her medications, and her ability to work during the relevant time-period. (Tr. at 23-30). He also discussed objective imaging, Young's medical treatment, and Dr. Cockerell's medical source statement. *Id.*

Considering these factors, the ALJ found that Young's subjective complaints were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. at 30). Citing to the required factors, the ALJ explained his conclusion over several pages in the decision. (Tr. at 27-31). This analysis was sufficient.

---

[8] When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). "An ALJ need not explicitly discuss each factor," and he may "decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Id.* (internal citations omitted).

### 3.  Treatment of Dr. Cockerell's medical opinion

Young's attorney spent a large portion of the appeal brief alleging that: (1) the ALJ failed to properly consider Dr. Cockerell's opinion; and (2) the Administration's rules for evaluating medical opinions are invalid and inapplicable because they are contrary to Eighth Circuit precedent. Young's attorney cites to nearly 60-year-old case law to support his argument. (*Doc. 10* at 19-21).

On January 28, 2017, the Administration promulgated new regulations governing how ALJs assess medical opinion evidence. *See* 20 C.F.R. § 404.1520c(a)-(c)(2017); (*Doc. 14* at 13-17). The new regulations, with an effective date of March 27, 2017, focus on whether an opinion is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes; (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. *Id*. An opinion is more persuasive if it is consistent with and supported by the medical evidence as a whole. 20 C.F.R. § 416.920c(c)(1-2) (2017); *Bonnett v Kijakazi*, 859 Fed. Appx. 19, 20 (8th Cir. 2021); *Phillips v. Saul*, No 1:19-CV-00034-BD, 2020 WL 3451519, at * 2 (E.D. Ark. June 24, 2020). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Id*.

The March 2017 regulation abolished the long-standing "treating physician" rule, which instructed ALJs to give greater weight to a well-supported treating provider's statement than to other opinion evidence from other sources. 20 C.F.R. § 404.1520c(a)). Recent Eighth Circuit case law makes it clear that the distant precedent Young relies on is no longer controlling and that the ALJ properly followed and applied the Administration regulations promulgated in 2017.[9]

Additionally, the Court concludes that the ALJ did not err when he found that the medical opinion from Dr. Cockerell was not persuasive. (Tr. at 31). Dr. Cockerell treated Young for her medical issues through 2020. His April 19, 2021 medical opinion limited Young to less than sedentary work requiring no manipulative or postural activities. (Tr. at 917-921). The opinion also suggested that medications could interfere with Young's cognitive abilities. *Id*. Finally, Dr. Cockerell wrote that

---

[9] The Commissioner has broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits. 42 U.S.C. §§ 405(a) 902(a)(5); *Barnhart v. Walton*, 535 U.S. 212, 217-225 (2002) (Commissioner has "considerable authority" to interpret the Act). The 2017 regulations inform the Commissioner about how to evaluate medical opinions for adjudication of claims, and the Eighth Circuit has accepted this policy. *See Austin v. Kijakazi*, 52 F.4th 723, 728-30 (8th Cir. 2022) (under revised regulations, treating physicians' opinions are no longer entitled to special deference; finding that prior precedent applying treating-source rule was inapposite); *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022); *Jarmon v. Kijakazi*, No. 22-2619, 2023 WL 23785232023 (8th Cir. March 7, 2023) (affirming ALJ's decision to deny benefits, and dispatching with the same argument that Young makes in the instant case).

Moreover, it is well settled that Courts should defer to an agency's regulatory construction unless it is arbitrary, capricious, or manifestly contrary to statues. *See Chevron, U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-844 (1984). Young has shown no clear error here.

pain could cause Young to miss one day or work per week.[10]  If all these conclusions were taken to be true, certainly, Young could not work.

The ALJ gave good reasons for finding Dr. Cockerell's opinion to be unpersuasive. (Tr. at 31). He stated that the opinion was inconsistent with the record and not supported by the evidence because: (1) Dr. Cockerell is a PCP, rather than a specialist in determining orthopedic functional restrictions; (2) his treatment notes show that he encouraged Young to exercise, which directly contradicts his written opinion; (3) the medical objective evidence does not show disabling conditions; (4) Dr. Cockerell failed to account for Young's use of medical marijuana or her occasional non-compliance with treatment recommendations; (5) Young's activities of daily living suggest a greater functional capacity; and (6) Young worked during the relevant time-period.[11]  Thus, the ALJ gave multiple good reasons for discounting Dr. Cockerell's medical opinion.[12]  (Tr. at 31).

---

[10]  Dr. Cockerell wrote that pain could cause "potential inconsistent frequency of work routine," hardly the black letter opinion that Young's absenteeism would prevent all work, which Young would prefer. (Tr. at 920).

[11]  Dr. Cockerell's opinion was on a checkbox form with little elaboration or citation to evidence. Short checkbox opinions may properly be discounted, if they are conclusory or unsupported by relevant medical evidence. *See Thomas v. Berryhill*, 881 F.3d 672, 675-676 (8th Cir. 2018).

[12]  *See* 20 C.F.R. §§ 404.1520c(c), 416.920c(c); *Norwood v. Kijakazi*, No. 21-3560, 2022 WL 1740785 (8th Cir. May 31, 2022) (adjudicator considers opinion more persuasive if it is supported by explanation and relevant objective medical evidence, and is consistent with other evidence in record); *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021) (inconsistency in ALJ's decision was harmless error, as case was not close call, and record otherwise contained substantial evidence establishing matter at issue).

### 4. Evidence submitted to the Appeals Council after the April 2021 administrative hearing

Young asserts that the evidence she submitted to the Appeals Council, after the ALJ's June 2021 decision, should have been considered and should have resulted in the claim being remanded to the ALJ. (Tr. at 8-20). Young submitted the following documents to the Appeals Council: (1) a supplemental letter from Dr. Cockerell dated August 23, 2021 (Tr. at 8-9); and (2) a psychiatric evaluation with evaluation dates of June 17, 2021, and July 12, 2021 (Tr. at 12-20).[13]

In a decision dated June 16, 2022, the Appeals Council determined that Dr. Cockerell's letter did "not show a reasonable probability that it would change the outcome of the decision." (Tr. at 2). Moreover, the Appeals Council concluded that the psychiatric evaluation did not "relate to the period at issue" and did not "affect the decision about whether [Young was] disabled beginning on or before June 3, 2021," (the date of the ALJ's decision). *Id.*

---

[13] The Appeals Council must consider evidence submitted with a request for review if it is "(a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." There must be a reasonable probability that the additional evidence would change the outcome of the decision to warrant consideration by the Appeals Council. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b); *see also McDade v. Astrue*, 720 F.3d 994, 1000 (8th Cir. 2013); *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995); *Williams v. Sullivan*, 905 F.2d 214, 216-17 (8th Cir. 1990). Evidence that is cumulative with previously submitted evidence or merely shows deterioration of a condition is not considered new. *Perks v. Astrue*, 687 F.3d 1086, 1093 (8th Cir. 2012).

Dr. Cockerell's letter attempted to refute the ALJ's RFC determination, and his decision to deny disability benefits to Young. (Tr. at 8-9). However, there was nothing new raised in Dr. Cockerell's letter. Moreover, because an RFC determination is a mixed question of fact and law, it was a decision reserved for the ALJ—not Dr. Cockerell.[14] Finally, Dr. Cockerell's letter did not suggest anything that undermined the ALJ's well-supported RFC.

The psychiatric evaluation suggested that Young had serious psychiatric conditions, with an inability to focus or concentrate.[15] (Tr. at 12-20). However, the record fails to support a conclusion that Young could not work due to mental issues: (1) Young had no abnormal mental status examination during the relevant time-period; (2) Young earned advanced degrees (although she said her mental difficulties dated back to her childhood) (Tr. at 12-14, 29, 46-47); and (3) she worked during the relevant time-period. (Tr. at 26). The record does not show that Young could not work due to mental health symptoms. The Court finds no error with respect to the Appeals Council's handling of the psychiatric evaluation.

---

[14] *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005); *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995).

[15] The psychological examiner suggested that Young keep a regular schedule and use a daily planner to better focus and improve her functional abilities. (Tr. at 19). The examiner's simple plan, which called for organization and structure to address Young's inability to focus or concentrate, does not suggest that she had disabling mental conditions.

### III.   Conclusion

There is substantial evidence to support the Commissioner's decision that Young was not disabled. The RFC incorporated Young's credible limitations, and the ALJ properly analyzed and discussed Young's subjective complaints. Furthermore, the ALJ did not err in his handling of medical opinions. Finally, the Appeals Council properly discharged its duty to review Young's applications for benefits.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be AFFIRMED and that judgment be entered for the Defendant.

DATED this 23rd day of August, 2023.


_____
UNITED STATES MAGISTRATE JUDGE